## LAURA P. HOLLAND *versus* EDWARD CRUFT *et al.*

A bill in equity brought by an administratrix, alleged that a residuary share bequeathed to her intestate by his father, was in the hands of the father's administrator with the will annexed, one of the defendants, and that the intestate, for the purpose of defrauding his creditors, had assigned such share to his brother, another of the defendants ; and it prayed that the assignment might be set aside on account of the fraud and the share be paid over to the plaintiff as administratrix. It was *held*, that although this Court might not have equity jurisdiction in the case of a bill to set aside a contract on the ground of fraud, yet that it had jurisdiction of the present bill, inasmuch as it sought the performance of a trust arising under a will or in the settlement of an estate, and the question of fraud must necessarily be considered and decided, as collateral and incidental to the principal inquiry.

It was *held*, that the administratrix, acting as the representative of the creditors of the intestate, was the proper party to bring such bill in equity.

The provision in the Revised Stat. c. 66, § 4, that when assets shall come to the hands of an executor or administrator, after the expiration of the four years limited for bringing suits against him, he shall be liable to an action at law, or to any suit or process in the Probate Court, on account of such new assets, by, or for the benefit of, any creditor, in like manner as if the assets had been received within the four years, takes off the limitation, so far as regards such assets, from the claims of creditors, as well those which have not, as those which have been proved within the four years.

Property recovered by an administrator after the expiration of the four years, by setting aside an assignment made by the intestate to defraud his creditors, is assets within the meaning of the foregoing provision.

Where an assignment by an intestate is set aside in a court of equity, on the application of his administrator, on the ground that it was made to defraud his creditors, and the whole of the property assigned is required for the payment of the creditors, the fraudulent assignee will not be allowed to deduct and retain the amount of the consideration paid by him for the assignment.

And in regard to such assignment, trustees, to whom the fraudulent assignee has tranferred his property for the payment of his creditors, cannot be deemed innocent purchasers for a valuable consideration, and cannot stand on a better footing than the fraudulent assignee himself.

BILL in equity, brought by Laura P. Holland, administratrix on the estate of her husband, Samuel M. Holland, deceased, against Edward Cruft, administrator, with the will annexed, on the estate of John Holland, deceased, the father of Samuel, George W. Holland, a brother of Samuel, and

Holland
v.
Cruft.

Aaron D. Weld junior and George Whitaker, assignees of the property of George.

The bill sets forth, that John Holland died in June 1824, testate ; that he devised certain real and personal estate to his wife during her life, and after her death to his five children in equal shares, and that after creating certain annuities, which had since terminated, the will directed that so soon as his youngest child should have arrived at full age, all the rest of his estate, real and personal, should go in equal shares to his children who should then be living ; that the youngest child came of age in June, 1832, and that the five children were then living ; that there is now in the hands of Cruft, as administrator, personal estate amounting to 25,000 dollars, to which Samuel M. Holland would be, if now living, and the complainant, as his personal representative, is entitled, under the residuary clause in the will ; that in May 1827, Samuel, having failed in business and being unable to pay his creditors, assigned to George all his right under the residuary clause, for a nominal consideration of 2000 dollars ; that this consideration was wholly inadequate for the *bonâ fide* purchase of the interest attempted to be conveyed, and that George did not in fact pay that sum, but that Samuel made the pretended assignment in order to prevent his creditors from having the benefit of the interest bequeathed to him and that George might hold the same in trust for him, &c., or else that Samuel, while distressed and embarrassed, improvidently, to the impoverishment of himself, his wife and family, and to the injury of his just creditors, in manifest contravention of the intentions of his father, and contrary to the policy of the law, in order to release himself for the moment from some pressing claims, assigned to George all his expectant and possible interest in the estate of his father ; that for the purpose of effecting these fraudulent designs, Samuel, in June 1832, delivered to George a letter of attorney authorizing George to do all acts in relation to the premises which Samuel might do if personally present ; that judgments on debts contracted by Samuel before the assignment to George, have been recovered against the complainant as administratrix, to be levied on assets *quando acciderint*, and that there are other and large claims against the estate of Sam

uel ; that Samuel, at the time of his decease, was not seised and possessed of any real estate, and was not possessed of or entitled to any personal property, other than the person- al property in the hands of Cruft, except a very small amount of personal property, which has long since been expended in the costs and charges of the complainant's administration ; and the bill prays that the deed of assignment and the letter of attorney from Samuel to George may be declared void and fraudulent as against the complainant as administratrix, and against the creditors of Samuel, whom she represents, and that one fifth of the "residue" of the testator's estate may be paid over to the complainant, to be administered by her as administratrix on the estate of Samuel.

Cruft, in his answer, admits that he has in his hands the share bequeathed to Samuel, amounting to $24,718 ; alleges that the same has been demanded of him by Weld and Whit- aker claiming under assignments from George, and by the complainant as administratrix ; and submits it to this Court to determine to whom the same shall be paid.

George W. Holland, in his answer, as to so much of the bill as alleges his purchase of Samuel's share to have been made to defeat or defraud the creditors of Samuel, denies that this Court, as a court of equity, has jurisdiction of the bill in that behalf ; he denies that the purchase was fraudulent against such creditors, or unconscionable as it regards Samuel ; he alleges, that prior to May 19, 1827, he had paid for Samuel several sums amounting to $2763·43 ; that Samuel wished to secure the repayment of this amount to the respondent, and also wished to raise a sum of money to relieve himself from pecu- niary embarrassments which pressed upon him at that time, and he proposed to sell to the respondent all the right, title and interest which he had or might have in the property in question, and the respondent agreed to purchase the same ; that the bargain was, that the respondent should give him two negotiable notes for $1000 each, one payable in one year, without interest, the other, payable in five years, with inter- est ; that if Samuel should be alive when the youngest child of John Holland arrived at full age, the respondent was not to make any claim against Samuel for the sums which had been

advanced to him by the respondent, but if he died before the time, the respondent's claim for such advances was to remain valid against his estate, and the respondent was to lose the $2000 and interest ; that the notes were accordingly given and the assignment made ; that the note payable in one year was paid at maturity ; that the other has not yet been paid, but is still outstanding against the respondent, and that the bargain was made fairly, and for a valuable and adequate consideration, taking into view the contingencies on which Samuel's interest depended.

Weld and Whitaker, in their answers, allege the assignment of Samuel's share to George, and several assignments by George, of all his property, embracing the share of Samuel, to the respondents, for the security and payment of George's creditors, including the respondents.

C. P. Curtis, and B. R. Curtis, for the plaintiff. The Court have equity jurisdiction in this suit, on the grounds that as to Cruft, it is the case of a trust under a will, and as to the other defendants, a trust arising in the settlement of an estate ; and having thus possession of the cause, they will try the question, which is merely collateral and incidental, whether the assignment by Samuel M. Holland was fraudulent as against his creditors. St. 1817, c. 87 ; Adams v. Cruft, 14 Pick. 16 ; Boynton v. Hubbard, 7 Mass. R. 112 ; Jones v. Boston Mill Corp. 4 Pick. 509, 510 ; East Sudbury v. Belknap, 1 Pick. 520 ; Johnson v. Whitwell, 7 Pick. 71 ; Gibbens v. Peeler, 8 Pick. 254.

The plaintiff, as representing the creditors of Samuel, may avoid the assignment as being in fraud of these creditors. Martin v. Root, 17 Mass. R. 228 ; Gibbens v. Peeler, 8 Pick. 254 ; Brooke v. Gally, 2 Atk. 34.

The assignees of the mere equitable title of George, stand in no better situation than the assignor. Davies v. Austen, 1 Ves. jun. 249 ; Whitfield v. Fausset, 1 Ves. sen. 387 ; Sugd. Vend. (1st Amer. edit.) 482. They were not innocent bonâ fide purchasers for a valuable consideration, within the meaning of the rule as to such purchasers. These assignments were made for precedent debts. Coddington v. Bay, 20 Johns R. 637 ; Rosa v. Brotherson, 10 Wendell, 86 ; Jack

*ton* v. *Myers*, 11 Wendell, 53*j* ; *Story* v. *Windsor*, 2 Atk. 630 ; *Hardingham* v. *Nichols*, 3 Atk. 304.

*Fletcher* and *Washburn, contra,* insisted that our statutes had not given the court equity jurisdiction in the case ; that the bill was founded on an alleged fraud, the prayer of it be-ing, that the assignment to George should be annulled, first, as being a fraud upon the creditors of Samuel, and, second, as being an unconscionable purchase of an expectancy from an heir in distress. *Dwight* v. *Pomroy,* 17 Mass. R. 327 ; *Given* v. *Simpson,* 5 Greenl. 303 ; *Black* v. *Black,* 4 Pick. 234 ; *Leach* v. *Leach,* determined in 1836.

The suit should have been brought by the creditors of Sam-uel against the administratrix and the defendants. A grantor cannot avoid his own contract on the ground of its being fraudulent as against creditors, neither can his personal repre-sentative. Creditors might set aside the assignment, if fraud-ulent, to the extent of their demands, and no further, or if their demands should exceed the assets, they might be allowed to recover *pro ratâ.* 1 Story on Equity, § 371 ; *Drinkwater* v. *Drinkwater,* 4 Mass. R. 354 ; *B .yd* v. *Hoyt,* 5 Paige, 65 ; *East Sudbury* v. *Belknap,* 1 Pick. 512 ; *Donovan* v. *Finn,* 1 Hopkins, 59.

SHAW C. J. delivered the opinion of the Court. The first question presented in this case, the question which most usually arises in cases in equity before this Court, is, whether this Court has jurisdiction of the parties and of the subject matter. It is admitted that the Court has no jurisdiction in equity, except such as has been given by statute, and that no general jurisdiction has been given to inquire into frauds and afford redress, in all cases of fraud. Taking these views as the basis of the argument, the defendant's counsel have con-tended that the main scope and purpose of this bill is, to aver and prove a fraud, in the alleged conveyance made by Samuel M. Holland, the plaintiff's intestate, to the defendant, George W. Holland, of his share in the estate devised to him by his father, to set aside and declare that conveyance void, and thus let in the plaintiff, in behalf of the creditors of Samuel M. Holland, who has since deceased, to claim this share, in the same manner as if the conveyance had not been made. Were

Holland
*v.*
Cruft.

*June 28th,*
1837

this the only object and purpose of the bill, and were George W. Holland the principal defendant, against whom the plaintiff is seeking relief by a decree, there would be much force in the argument and much difficulty in sustaining the jurisdiction. But this is a partial view only of the question, and does not present it in its true light.

This Court is by statute invested with jurisdiction in equity, in all cases of trust arising under deeds, wills, or in the settlement of estates. Cruft is the administrator with the will annexed, of the will of John Holland, and is called upon to make distribution of the estate according to the will. He is then a trustee for the party entitled to the share of the estate given to Samuel M. Holland, it is a trust arising under a will and the plaintiff is seeking to enforce it in behalf of the creditors and others interested in the estate. Cruft as such administrator, admitting that he holds the share in question, and admitting that he is ready and willing to account for it, and pay it over to the party entitled, still denies his liability to pay it to the plaintiff, because that Samuel M. Holland, in his lifetime, conveyed the same to George W. Holland, of which the latter has given him notice, and now claims the same of the administrator. It is thus manifest, that the question of the validity of this conveyance is put directly in issue between the parties. But the question thus raised, and which must necessarily be considered and decided, is collateral and incidental The plaintiff does not call upon the grantee under that conveyance, to surrender or account for the property conveyed. He is made a party only because he has claimed the property at the hands of the trustee, and it was fit therefore that he should be a party, both that he might have an opportunity to assert and maintain his own rights through the trustee, and that he might be bound by the decree, and the trustee be protected in the execution of his trust. The plaintiff claims the execution of a trust arising under a will in her favor; and it appears that the defendant Cruft holds property subject to such trust. This gives the Court jurisdiction. In the exercise of this jurisdiction, every question, whether of law or fact, upon which the rights of the parties depend, of whatever nature or character, must be inquired into and decided, accord

ing to the established course of proceedings in courts of equity.

A question is not to be deemed less an incidental and collateral one, because it is the most important one, or because the decision of it, either way, will be decisive of the merits of the cause. Here the direct question is, whether the defendant Cruft is bound, under the circumstances disclosed and proved, to execute an acknowledged trust, by accounting with and paying to the plaintiff certain property ; but this depends on another question interposed, viz., whether he is not legally and equitably obliged to account for the same property to another. This question, though important and decisive, is, in regard to the other, collateral and incidental only ; and it would not, of itself, be the subject of a direct suit in equity, and is one over which the Court has by statute no general jurisdiction in equity ; yet when it arises in the exercise of an acknowledged jurisdiction in equity, it is to be considered and settled, as necessary to the principal inquiry. The Court are therefore all of opinion, that the objection taken to the jurisdiction of the Court cannot be sustained.

The case in this respect is entirely distinguishable from the case of *Leach* v. *Leach*, decided in 1836. The Court were there called upon to reform and correct a plain written contract, on the ground that a full equity jurisdiction having been given in cases of controversies between partners, the Court had jurisdiction of the cause, as a contract between partners, and might exercise the power of reforming the contract as incidental. But it was decided otherwise, on the ground that to reform written contracts is exclusively an equity power, and not being conferred in any form on the courts of this Commonwealth, cannot thus be claimed incidentally. But that a contract may be avoided on the ground of fraud, is as clear a principle of law as a rule of equity, and the question is only as to the mode of inquiring into it and applying it, in settling the rights of parties.

That such a question of fraud may be inquired into and decided on a hearing of a case in equity, the case of *Johnson* v. *Whitwell*, 7 Pick. 71, is in point.

2 The next material question is, whether this suit can be

maintained by the present plaintiff, who is the administratrix of Samuel M. Holland, on the ground that the assignment and conveyance from Samuel M. Holland was fraudulent and void as against creditors.  It is contended that a conveyance of property by a debtor, made with the intent to defraud the creditors of the grantor, though made without any adequate consideration, is still good and valid as between the parties, and can only be avoided by creditors or purchasers ; and upon this ground it is contended, that the creditors must appear and prosecute in their own name, and that the administrator must be deemed the personal representative of the deceased, and can only avoid a conveyance which his intestate might have avoided.  That the rule of law as stated, is undoubtedly a well settled one, is admitted, but we think the inference drawn from it is not a correct one.

In many respects the administrator is the trustee and repre-sentative of creditors, and as such may stand upon their rights, and assert claims, which the intestate himself could not have asserted.

The whole course of proceeding in this Commonwealth, especially in relation to the settlement of insolvent estates, proceeds on the assumption, that the executor or administra-tor is in the first instance the trustee and representative of the creditors, and only secondarily, the trustee for heirs.  By various provisions of statutes, all the estate of a debtor is made liable for all debts, as well those by simple contract, as those by specialty, and heirs have no claims except to the residue. In order to enable executors and administrators to make such distribution among creditors, they are in many instances ex-pressly invested with authority to take into their custody and under their administration, property liable for the payment of debts.  Real estate which has been conveyed by the deceas-ed to defraud his creditors, may be sold by the administrator, and for that purpose may be sued for and recovered by the administrator, although it is very clear, from the principle above stated, that the grantor himself could not avoid his grant, made under the same circumstances.  *St.* 1805, *c.* 90, § 5.

Similar provisions are introduced into the revised sta

ates, with a still more explicit power to the executor or administrator to maintain an action for the recovery of such estate. Revised Stat. *c.* 71, § 11, 12, 13.

It was contended that if this suit was to be sustained at all, it was in nature of a creditors' bill, that the creditors must first exhaust all the means afforded them by the law, by obtaining judgments against the administratrix, and then in their own names, must bring this suit against the administratrix and the other defendants, as holding the property. But it must be recollected, that whatever would be the course of proceeding under other systems, under our own, as settled by statute, an entirely different course of proceeding is pointed out. As the whole of the property of the deceased is liable for the whole of the debts, if the assets are insufficient to discharge the whole of the debts, with the exception of a small number of preferred debts, all are to be paid *pro ratâ*. To accomplish this object, the administrator is entirely protected from all legal process, for the term of one year, to enable him to ascertain the condition of the estate. If he finds or has reasonable grounds to believe, that the assets will not be sufficient to meet and discharge all the claims against the estate, he makes a representation thereof to the judge of probate, whereupon commissioners are appointed to receive and examine the claims, and allow or disallow them. In the same time the creditor is absolutely disabled from bringing an action. He must submit his claim to the examination of the commissioners, and unless he does this, he is for ever barred. If the claims are allowed, as, if just and well founded, they probably will be, no action can ever be brought, and of course no judgment ever obtained. But supposing, in such case, the allowance of claims of creditors ought to be considered equivalent to a judgment, and supposing the creditors might all unite in a bill against the administrator, and the holders of the property fraudulently conveyed to defeat creditors, which would be attended with many inconveniences, we can perceive no just reason why the administrator should not do the same thing in their behalf. He holds the means in his hands to carry on such a suit for the common benefit, he is charged by the nature of his

office, to act in the first instance for the benefit of all the creditors, and his fidelity is secured by bond and oath, by all the guards which the law can raise to secure it. The creditors are often very numerous, and many of them interested to a small amount only. It might be extremely difficult to bring them to act in concert. Should all not unite, the great object of the law, an equal *pro ratâ* distribution, might be defeated or rendered difficult. Whereas the administrator is in the nature of a public officer, pointed out by law, to collect, apportion and distribute the assets, and is placed in a situation to do it most conveniently and effectively, for the interests of all concerned.

But this point, in this Commonwealth, seems well established by authorities.

The case of *Martin* v. *Root*, 17 Mass. R. 228, is quite in point. It was held there, than an administrator might recover for the benefit of creditors where the intestate himself could not recover. The administrator, in this case, was likened to the assignee of a bankrupt, acting as the trustee and representative of the creditors, and standing upon their rights, in relation to property conveyed away in fraud of creditors.

The more recent case of *Gibbens* v. *Peeler*, 8 Pick. 254, is directly in point. The intestate, in his lifetime, had delivered to the defendant two promissory notes, indorsed in blank, intending to vest the property therein, as far as he could do so, in trust for his children. Here was a complete transfer of the legal interest in the securities, a transfer good as between the parties, and void only as against creditors. But the administrator was held entitled to recover them as the representative of the creditors. And the whole decision proceeds on the assumption, that he might have maintained an action, by replevin, for the like purpose, if the notes themselves could have been come at for that purpose. This case decides clearly, that though an administrator is called the personal representative, and to many purposes he is so, yet he is also the representative of the creditors, and in this capacity can assert claims and maintain actions which the intestate could not.

It does not distinctly appear that the estate of Samuel M. Holland has been represented insolvent; but it does appear

that the very small sum, appearing on the inventory, has been wholly applied to the payment of incidental expenses, that several judgments have been recovered against the administratrix, of assets *quando acciderint*, that whenever there are assets under the control of the administratrix, by this suit or otherwise, she will be bound to make a representation of insolvency, to the end that an equal distribution may be made among the creditors.

And we think that this case is distinguishable from the case of a judgment creditor, seeking the aid of a court of equity to discover and apply the property of the debtor to satisfy his judgment. There, before thus calling in the aid of a court of equity, he must show that all legal means for obtaining satisfaction have been exhausted.

This is the case of one standing in the double capacity of a representative of the deceased debtor, and a trustee for his general creditors, seeking to collect in and obtain the property of the deceased debtor, for the use and benefit of those general creditors. And as all the property when collected by the administratrix, is applicable to the payment of debts, it is entirely immaterial whether the property was of such a character as that it would be liable to legal process in the ordinary mode of enforcing the payment of debts by law, or not. It is sufficient to sustain the equitable claim, on which this bill is founded, that, the property sought to be recovered, will be applicable by law to discharge the debts of the deceased, and that, in case of its being an insolvent estate, without any judgment. The issuing of a commission to receive and examine the claims of creditors, and report thereon, with an appeal to a court of law, in case of either party being dissatisfied with the report, being a judicial proceeding, in the nature of a judgment, adapted to the case. An order of distribution, on such report, as finally adjusted, is in the nature of an execution, binding upon property liable for such debts.

3. Considering that the Court has jurisdiction of the cause, either as of a trust arising under a will, or in the settlement of an estate, and that the plaintiff as administratrix, is so far the trustee and representative of creditors, that she is entitled to the aid of the Court, to obtain such property of her intes-

tate, as creditors may legally claim to apply to the satisfactior of their debts, the question recurs, whether the share and property in the hands of the defendant, Cruft, which was bequeathed to Samuel M. Holland, the intestate, by his father John Holland, ought to be made applicable to the payment of his debts. And it unquestionably ought to be so received and applied, unless Samuel M. Holland so alienated it in his lifetime, as not only to bar his own claims to it and those of his heirs, but also those of his creditors ; and this depends upon the question whether the conveyance of all his right and interest under his father's will, to his brother George W. Holland in February 1827, aided by the power of attorney given to him in June 1832, prove a valid and binding conveyance of that share, as against creditors. And the Court are of opinion, upon the evidence, that this was a conveyance and alienation of the property made for a fraudulent purpose, to delay and defeat the creditors of the grantor, and that it was consequently inoperative and void, as well against all those who were creditors at the time of such alienation, as those who became his creditors afterwards, and cannot therefore be set up to bar the plaintiff's claim.

(After a recapitulation of some of the principal parts of the evidence, which was voluminous, depending upon an exact examination of sums, dates and other particulars, the Chief Justice proceeded to state the result as follows :)

The result to which the Court have come upon this examination of the evidence is, that although the fraudulent intent and purpose of this conveyance to delay and defeat the creditors of the grantor, is denied by George W. Holland in his answer, yet it is testified to directly and explicitly by one witness, in addition to which the answer of the respondent is impeached and controlled and the testimony of the witness is corroborated and confirmed by many circumstances and by the general tenor of the evidence ; and the Court are therefore of opinion, that the conveyance of Samuel M. Holland to George W. Holland was fraudulent and void as against the creditors of the former, and that the plaintiff is entitled to relief, from the trust funds in the hands of the defendant Cruft

After this opinion was given, the case was referred to a master; who reported that he gave public notice to the creditors of Samuel M. Holland, that he would meet them on August 9, 1837, for the purpose of receiving their claims, and that he was on that day attended by the parties to this suit and by divers creditors of Samuel; that Samuel died on January 18, 1833, and that administration on his estate was granted to the plaintiff on June 24, 1833; that the claims of the creditors were objected to by the plaintiff, and by George W. Holland assuming to be the assignee of Samuel, on the ground that they were barred by the statute of limitations, and by the statute limiting claims against executors and administrators.

The master allowed claims amounting to $18,000, to which no exceptions were taken.

He allowed $10,686, claimed by the United States on a customhouse bond signed by Samuel, and on judgments recovered against him on similar bonds. George W. Holland excepted to their allowance, on the ground that the bonds were barred by the statute of limitations in favor of executors.

He reported claims amounting to $12,765, as not barred by the general statute of limitations, on account of the absence of Samuel from the Commonwealth, but as at present barred by the statute limiting claims against executors and administrators. Several of these creditors took exceptions to this part of the report.

Many other claims were made, which were disallowed by the master.

He reported that the trust fund in the hands of Cruft amounted to $29,649.

He reported in regard to the other property of Samuel, that John Holland devised to his wife during her life his mansionhouse and the income of a right in Long wharf, which mansionhouse and right were, at her decease, to be equally divided among the five children, and the heirs of their bodies respectively; that the widow is still living; that the proceeds of the mansionhouse, which had been sold in 1825, by authority from the legislature, and of a part of a right in the wharf, amounted to $24,860, and that the residue of the right

is of the value of $37,500. Exception was taken by George W. Holland, Whitaker and Weld, that the reversion of one fifth of these sums ($12,472) was not reported as a part of the estate of Samuel.

C. P. Curtis and B. R. Curtis said the question had been raised, whether the property of Samuel fraudulently assigned, or the residue of his estate, should be first applied to the payment of his debts ; but that it was admitted that claims reported by the master to the amount of $18,000, were unobjectionable ; and if the United States and the creditors who did not prove their claims within the four years after the appointment of the administratrix, were allowed to come in, the debts of Samuel would exceed the amount of both funds, and in that case the question would become immaterial ; and they contended that by the Revised Stat. c. 66, § 4, when assets are received by an administrator after the four years have expired, the limitation is removed as to all the creditors.

The provision referred to is, " When assets shall come to the hands of an executor or administrator, after the expiration of the said four years, he shall account for and apply the same, in like manner, as if they had been received within the four years ; and he shall be liable to an action at law, or to any suit or process in the Probate Court, on account of such new assets, by, or for the benefit of, any creditor, in like manner as if the assets had been received within the said four years."

Aylwin and Washburn maintained that the statute did not intend to remove the limitation, except where the creditor had brought his action within the four years and recovered judgment of assets, quando acciderint, or, in the case of an estate represented insolvent, had proved his demand before the commissioners. Revised Stat. c. 68, § 20, 5, 6, 7.

SHAW C. J. The Court are of opinion, that the claims of creditors, stated in the report to be at present barred by the statute limiting the right of bringing actions against administrators to four years, ought to be considered as proper claims to be admitted against the estate of Samuel M. Holland, notwithstanding that statute.

By the Revised Statutes, there is an exception to this limitation, where assets shall come to the hands of the administra

tor and in that case the creditor may, under certain restrictions, bring his action after four years.   Revised Stat. c. 66, § 4.

The recovery of this property to the use of creditors, by invalidating the assignment several years after the plaintiff Laura P. Holland became the administratrix, is, in legal contemplation, an obtaining of new assets, that is, of property coming to her hands, applicable by law to the payment of their debts, by which they are restored to the right of action, or in case of a commission of insolvency, to the right of proving their debts before the commissioners.   The Court are also of opinion, that this principle includes the debts due to the United States, as well the bonds as the judgments.

It being conceded, on the argument, that the uncontested debts due from Samuel M. Holland's estate, including those debts to which there is no other objection but the four years' limitation, will exceed the amount of the trust fund in Cruft's hands, together with any other property alleged to be liable for the payment of the same debts, it becomes unnecessary to consider the question, which particular fund is first applicable.

For the same reason, it becomes unnecessary to decide upon several exceptions taken to the allowance and disallowance of several claims, made by particular creditors before the master.   The principal object of the reference to the master was to ascertain, whether there was a sufficient amount of debts due from Samuel M. Holland's estate, to require the application of the whole fund in the hands of the trustee Cruft. That being ascertained, the administratrix will be entitled to a decree for the whole amount.   But the proof thus given before the master is not to be deemed conclusive.   There being a regular commission of insolvency from the Probate Court, which is now open, the creditors will prove their debts in the manner provided by law, to be reported by the commissioners, subject to an appeal by either party, in order that such claims, if contested, may be settled according to the course of the common law.   The whole of such claims, as finally adjusted, will determine the apportionment amongst the creditors, as, the estate being insolvent, all cannot receive their full amount.

Such inquiry before the commissioners and before the

Holland
v.
Cruft.

courts, is to be conducted in the usual mode of settling an insolvent estate ; except that it is to be understood, that the assets have come to the hands of the administratrix more than four years after she had taken administration, so that such debts are not within the four years' limitation, and not barred by that statute.

In case a decree is to be passed directing the funds to be paid over to the administratrix to be made applicable to the payment of debts, the decree is to be so drawn as to show, that the report of the master upon the allowance and disallowance of the claims of creditors of Samuel M. Holland is made for the information and guidance of this Court, and is not to be considered as conclusive in any other place, before courts or commissioners of insolvency ; but they are there to be proved and allowed or disallowed upon their merits, according to the legal course of proceeding, except that they are not to be deemed barred by the four years' limitation, for the reasons already given, and this proceeding will be considered as independent of the report of the master.

*June 11th.*     *B. R. Curtis.*     A further question has been made, whether George W. Holland and his assignees have a right to reimbursement of the 1000 dollars which he paid to Samuel. The statute of 13 *Eliz.* declares, that a grant made to defraud creditors, shall be as against them, " utterly void, frustrate and of none effect ;" and it would be in direct contravention of the statute to permit an assignee, who knowingly assisted in the commission of the fraud, to recover back the consideration paid by him. *Martin* v. *Root*, 17 Mass. R. 222 ; *Sands* v. *Codwise*, 4 Johns. R. 597 ; *Boyd* v. *Dunlap*, 1 Johns. Ch. R. 478 ; *Bean* v. *Smith*, 2 Mason, 296 ; *Garland* v. *Rives.* 4 Randolph, 282.

*Washburn*, in behalf of Weld and Whitaker, said that he who seeks equity must do equity, and that a very clear case of *actual* fraud must be proved, before the Court will hold the assignment to be absolutely and entirely void. 1 Story on Equity, 194 ; *Twistleton* v. *Griffith*, 1 P. Wms. 310 ; *Gwynne* v. *Heaton*, 1 Bro. C. C. 1 ; *Peacock* v. *Evans*, 16 Ves. 514 : *Gowland* v. *De Faria*, 17 Ves. 24.

*June 29th.*     SHAW C. J.     The remaining question in this case is,

whether the defendants, Whitaker and Weld, who appear here as the assignees of George W. Holland, under an assignment made by him for the benefit of his creditors, are entitled to be repaid the sum which George W. Holland paid to Samuel M., on the making of the conveyance, now decided to have been made to defraud the creditors of Samuel. It is insisted in their behalf, that the property ought to be deemed in equity to stand as a security for the sums actually advanced by George to Samuel, and the conveyance ought to be declared void only upon condition of repaying to him, or his assignees, the sums so actually advanced. It is undoubtedly competent for a court of equity thus to set aside conveyances, requiring those in whose favor they are so set aside, to do equity by restoring the actual consideration paid. *Peacock* v. *Evans*, 16 Ves. 514; *Boyd* v. *Dunlap*, 1 Johns. Ch. R. 478. This however is most commonly applied to that class of cases, where a conveyance is set aside, not because strictly speaking it is fraudulent, but where it is unequal and unconscionable to carry it into effect ; as where it is made upon inadequate consideration, or where in consequence of the relation between the parties, as between a late guardian and his late ward, or where there is some other fiduciary relation of like kind, where the parties have not met and negotiated upon equal terms, or where there is ground to suspect undue influence and unfair advantage. To many purposes, such a conveyance shall be deemed a mortgage or defeasible conveyance, and the vendor shall be permitted to redeem his property, upon a restoration of the consideration. *Gowland* v. *De Faria*, 17 Ves. 24 ; *Bean* v. *Smith*, 2 Mason, 296. But the Court are of opinion, that this cannot be considered as a case falling within that principle. It is quite manifest, we think, upon the evidence, that nothing was paid by George W. Holland as the consideration of this conveyance, beyond $1000. He gave two notes for $1000 each, one of which was negotiated by Samuel, and paid by George. But there is no evidence that the other was ever paid or claimed, and so many years have now elapsed, and so many changes of circumstances taken place, that there is no reason to suspect that it ever will be. All that these defendants could claim, upon this ground, would

be $1000. This conveyance has been set aside, not upon the ground mainly that it was made upon an inadequate consideration, or that it was a hard or unconscionable bargain, but because it was made to defraud the creditors of the grantor.

It is quite clear that these defendants, as the assignees of George W. Holland, cannot be deemed purchasers for a valuable consideration, and can stand upon no better footing, than George W. Holland himself could. No money was paid by them ; for a nominal consideration he assigned the interest to them, in trust for the benefit of his creditors. He conveyed to them all his right, title and interest in this fund, under which they would take such right as he had and no more. The question therefore is the same as if George W. Holland were himself claiming the re-payment of the money thus advanced by him upon this purchase.

Were this a competition between George W. Holland and his creditors on the one side, and the heirs of Samuel M. Holland on the other, it might present a different question, inasmuch as such a conveyance would be valid against Samuel M. Holland and his heirs, and is only declared fraudulent as against the creditors of Samuel the grantor. In the case already cited, *Martin* v. *Root*, 17 Mass R. 222, it was held that where such a conveyance had been set aside as fraudulent against creditors, though the whole of the property was not required for the payment of debts, yet it being avoided the heirs would have the benefit of it, as an incidental consequence, not as the direct purpose of avoiding the fraudulent act This however was at law, where a conveyance in general cannot be held good in part and bad in part. Whether a different rule would apply in equity, where a conveyance may be set aside upon terms, it is not now necessary to give an opinion, because it now appears that the whole fund is necessary to the payment of the creditors of Samuel, against all of whom such a conveyance, both at law and in equity, must be deemed void.

The claim of the assignees of George W. Holland to be repaid the sum paid by him, cannot be sustained